## PHILIP YOUNGS v. JACOB SHOUGH.

The following demand is insufficient. " The plaintiff demands of the defendant ten dollars and fifty cents, for making a coffin for Margaret, the defendant's mother, which this defendant promised to pay the plaintiff for, as he, the plaintiff, can prove."

An action cannot be maintained on a promise to pay the debt of a third person, unless it be in writing, nor on a promise without consideration.

---

This was a *certiorari* directed to the Court of Common Pleas of the county of Salem. The case is fully explained in the opinion of the court, delivered by Justice Ford.

FORD, J. Jacob Shough demanded before a Justice, of Philip Youngs, ten dollars and fifty cents, "for making a coffin for Margaret, the defendant's mother, which the defendant promised to pay the plaintiff for, as he the plaintiff can prove;" and recovered judgment for the demand, which judgment was affirmed on an appeal to the Common Pleas of Salem.

Youngs' mother had married a second husband whose name was Sigers, and lived with him from the time of the marriage, till she died. Shough made the coffin in question, and delivered it to Sigers, the husband, at his house, who was in circumstances quite competent to pay for it. It does not appear that he had ever refused to do so. About a year after the loss of his wife, he made a public vendue of his effects or some of them, and afterwards moved out of the country, leaving the debt of this article unpaid, and probably forgotten. Some time after he was gone away, Mr. Shough called on Philip Youngs, and requested him to pay for his mother's coffin. Youngs replied that he had no money then; but when he got the returns for his wood, he

would settle it.    He now moves to reverse the judgment recovered against him, on this promise—First, because being a promise not to pay his own debt, but the debt of Sigers, a third person, it was void under the statute of frauds, because not made in writing. *Rev. Laws,* 152, *Section* 14.    Secondly, it was a promise without consideration, and void at the common law.    2 *Bl. Com.* 445: *Bul. N. P.* 147.

The defendant's counsel does not deny the law, but the facts as assumed.    He says it was proved to be the debt of Youngs himself; that the coffin was made at his request.    Both parties rely on the testimony of William Applegate, whose evidence has been reduced to writing, under a rule for the purpose.    He says, there being no person handy, to go for a coffin, Philip Youngs came to the woods for me, and I went with him to the house of Mrs. Sigers.    They both informed me where to go for it.    Mr. Sigers ordered his horse to be got up for me; he offered to let me wear his coat, as the weather was coolish.    I rode to Mr. Shough's and spoke for a coffin *"for Siger's wife."*    I mentioned no name but Sigers.    The name of Philip Youngs was not mentioned.

There is not the smallest evidence of Youngs' applying to Shough to make the coffin, or requesting him to do it.    All he did, was to look up a messenger.    Any neighbour who had a spark of kindness, would have done the same act for the husband.    It was the husband who sent the messenger.    The message was delivered in his name.    It is not possible that Shough did the work at the request of Youngs, for his name was not mentioned to Shough, till a year afterward, for all that appears.    It was in every point of view, the debt of Sigers; he sent the messenger; it was spoke for in his name; it was delivered to him; it was necessary for his wife; he was bound to provide it for her, by law; he applied it to her use; and for it, he became liable to Shough.    Now it is clearly settled, that if he originally contracted the debt, the collateral promise of a third person, to pay it, is void in law, unless it be made in writing.    It is clearly within the statute of frauds.    On this ground alone, I think the judgment must be reversed.

Moreover, it was a promise without a consideration to support

it; nothing was given by Shough, nothing received by Youngs; he did not lie under a moral obligation to be responsible for a coffin for another man's wife, while there was a husband living, who had taken this mother from her children, and appropriated her society, her labor and services exclusively to himself and his affairs; every legal and moral obligation lay on him. Youngs' subsequent agreement to settle the affair is what the law denominates a naked promise. If one say that he will give another person a hundred dollars for nothing, he cannot be compelled to perform it against his will.

Furthermore, the state of demand is defective in substance; every thing in it may be true, and yet not amount to a cause of action; for assumpsit will not lie without laying some consideration or request, and neither is shown on the statement of this demand. It is the essential part of the contract. 4 *Johns.* 84; 1 *Chit. Plead.* 261; where none is laid, the court may not presume that any exists. The reason for omitting to lay a request, was evidently because none could be proved by Applegate. The only color of consideration contained in the state of demand, is, that the coffin was made for the defendant's mother. But a son is no more liable in law for his mother, than father, brother or uncle. One relation cannot run another in debt without his consent or request; otherwise any man might be undone by his father or mother, brother or sister. The court below evidently knew this to be so, and founded their judgment simply on this express promise to pay.

Let the judgment be reversed.

*Judgment Reversed.*

*Eakin,* for plaintiff.
*R. P. Thompson,* for defendant.

CITED in *Denny* v. *Quintin,* 4 *Dutch.* 136.